**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>ROBERT BROWN,<br><br>  Defendant. | Case No. 2:15–cr–53–LRH–VCF<br><br>**REPORT & RECOMMENDATION**<br><br>MOTION TO SUPPRESS (#18) |

This matter involves the United States of America's prosecution of Robert Brown for being a felon in possession of a firearm. *See* (Indict. #1[1]). Before the court is Mr. Brown's Motion to Suppress (#18). The government opposed (#23) and Mr. Brown replied (#31). For the reasons stated below, Mr. Brown's Motion to Suppress should be denied.

**I. LEGAL STANDARD**

The constitutional principles at play in Mr. Brown's motion are well established. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures" and states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. The touchstone of the Fourth Amendment is reasonableness under the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). The Fourth Amendment's emphasis on reasonableness under the totality of the circumstances underpins four general principles that apply here.

---

[1] Parenthetical citations refer to the court's docket.

1

First, a routine traffic stop constitutes a seizure under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809 (1996). A police officer may initiate a traffic stop if the officer has "reasonable suspicion" or "probable cause to believe that a traffic violation has occurred." *United States v. King*, 244 F.3d 736, 737 (9th Cir. 2001); *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Reasonable suspicion "requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person" violated a traffic law. *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000) (citation omitted).

Second, the court's focus is objective. A police officer's "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813. This means that a police officer "may be wrong about precisely why an act is illegal" and still have reasonable suspicion to conduct a traffic stop under the Fourth Amendment. *King*, 244 F.3d at 739; *see also United States v. Wallace*, 213 F.3d 1216, 1220 (9th Cir. 2000) (stating that police officers are "not taking the bar exam"). However, if a police officer "makes a traffic stop based on a mistake of law, the stop violates the Fourth Amendment" because the basis for the stop is objectively unfounded. *Twilley*, 222 F.3d at 1096.

Third, a police officer may arrest a person if the officer has probable cause to believe that a person has violated the law. *Gilker v. Baker*, 576 F.2d 245, 246 (9th Cir. 2001). Probable cause is a "fluid concept;" it permits a police officer to conduct a search if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983).

Fourth, a police officer does not violate the Fourth Amendment if evidence of a crime or contraband is seen in plain view. *Coolidge v. New Hampshire*, 403 U.S. 443 (1971). Nor does a police officer violate the Fourth Amendment if he searches a person incident to arrest or conducts a warrantless search of a car incident to arrest. *Thorton v. United States*, 541 U.S. 615 (2004); *United States v. Robinson*, 414 U.S. 218 (1973); *Carroll v. United States*, 267 U.S. 132, 153 (1925).

## II. DISCUSSION

The heart of the parties' dispute concerns the reasonableness of Officer Perry's basis for stopping Mr. Brown. Mr. Brown contends that Officer Perry predicated the traffic stop based on a mistake of law. The government contends that Mr. Brown's argument is unavailing because Officer Perry had two bases for stopping Mr. Brown. The court agrees with the government and, therefore, recommends that Mr. Brown's motion to suppress be denied. Each step of the traffic stop is examined below.

### A.

The court's analysis begins with the circumstances leading to the initial stop. The testimony presented at the court's evidentiary hearing established that, on February 5, 2015, Officer Perry sat in his patrol car at the intersection of South Eastern Avenue and East Charleston Boulevard in Las Vegas, Nevada. It was 7:40 p.m. and a glow of traffic lights, streets lights, and car lights lit the intersection.

Officer Perry saw that a purple PT Cruiser was also stopped at the intersection. It was in the adjacent lane, and was one car ahead of him. A large flower necklace hung from its rearview mirror. Officer Perry believed that the necklace obstructed the driver's view in violation of Nevada Revised Statute § 484D.435(1). The statute reads:

> A person shall not drive any motor vehicle with any sign, poster or other non-transparent material upon the front windshield, side wings, or side or rear windows of such vehicle which obstructs the driver's clear view of the highway or any intersecting highway.

Nev. Rev. Stat. § 484D.435(1) (West).

This brings the court to the first dispute: was Officer Perry's belief that necklace violated section 484D.435(1) reasonable? The government contends that Officer Perry's belief was reasonable because the necklace was large and may have reasonably impeded the driver's view. The court disagrees. Officer Perry's belief was unreasonable as a matter of law.

In *United States v. King*, the Ninth Circuit construed an Alaskan statute with similar language and held that objects hanging from a rearview mirror do not violate the statute because the phrase "upon the front windshield" requires the objects to be in "direct contact with the windshield." F.3d at 740. In *United States v. Sanders*, the Honorable Peggy A. Leen, U.S. Magistrate Judge, construed section 484D.435(1) in light of *King* and held that section 484D.435(1) also requires "direct contact with the windshield." *See* — F. Supp. — 3d, No. 2:14–cr–369–GMN, 2015 WL 1413386, at *10 (D. Nev. Mar. 27, 2015) (adopting Judge Leen's report and recommendation in full).

Here, the government presented no evidence showing Officer Perry believed that the large flower necklace was in direct contact with the windshield of the PT Cruiser. Under *King* and *Sanders*, Officer Perry's belief was not reasonable. This, however, does not end the court's inquiry because the court also finds that Officer Perry did not predicate the stop on the necklace alone.

**B.**

This brings the court to the heart of the parties' dispute: did Officer Perry have reasonable suspicion to stop the PT Cruiser on Howard Drive and seize its passengers? Mr. Brown argues that Officer Perry predicated the stop on his misunderstanding of section 484D.435(1) and then ran the PT Cruiser' license-plate number and discovered the existence of outstanding warrants for the registered owners. Based on this timeline, Mr. Brown concludes that the PT Cruiser was stopped without reasonable suspicion and Mr. Brown's Fourth Amendment rights were violated.

The court disagrees and makes the following findings of fact from two pieces of evidence that were admitted during the court's hearing: time-stamped audio from the Las Vegas Metropolitan Police Department's dispatch (Gov't Ex. 2) and the computer-aided-dispatch ("CAD") report (Gov't Ex. 5), which memorialized Officer Perry's communications with dispatch.

At 7:40 p.m., Officer Perry sat in his patrol car at the intersection and saw a large flower necklace hanging from the rearview mirror of a purple PT Cruiser. The necklace raised Officer Perry's suspicion; he incorrectly believed that the PT Cruiser may be violating Nevada Revised Statute § 484D.435(1). As a result, Officer Perry and dispatch began communicating. It was now 7:40:49. (Gov't Ex. 2) (time-stamped audio).

At 7:41:02, Officer Perry read the PT Cruiser's license-plate number to dispatch. (*Id.*) This event was recorded in the CAD at 7:41:48. (Gov't Ex. 5). At 7:41:17, Officer Perry informed dispatch that he is initiating a traffic stop. (Gov't Ex. 2). This event was also recorded in the CAD at 7:41:48. (Gov't Ex. 5). At 7:41:32, dispatch informed Officer Perry that the PT Cruiser's registered owners had outstanding warrants. *See* (Gov't Ex. 2). This event was also recorded in the CAD at 7:41:48. (Gov't Ex. 5).

Officer Perry then stopped the PT Cruiser on Howard Drive and made a seizure under the Fourth Amendment. *Whren*, 517 U.S. at 809. This was reasonable. It is immaterial that Officer Perry incorrectly believed that the flower necklace violated section 484D.435(1). A police officer "may be wrong about precisely why an act is illegal" and still have reasonable suspicion to conduct a traffic stop under the Fourth Amendment. *King*, 244 F.3d at 739. Here, Officer Perry believed the driver of the PT Cruiser was violating the traffic laws for two reasons. His mistaken belief regarding the first reason does not invalidate his second reason for initiating the stop.

A police officer's "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813. When reviewing a motion to suppress under the Fourth Amendment, the court limits its gaze to the objective and particularized facts and considers whether the police had an objective basis for suspecting wrongdoing under the totality of the circumstances. *Arvizu*, 534 U.S. at 273. An objective basis existed here: the registered owner of the PT Cruiser had outstanding warrants and the occupants of the PT Cruiser appeared to match the description of the registered owner.

The court, therefore, finds Mr. Brown's Fourth Amendment rights were not violated when he was stopped because Officer Perry had reasonable suspicion to believe that a violation of law had occurred.

### C.

This brings the court to the parties' third dispute: was Mr. Brown's Fifth Amendment right against self-incrimination violated under *Miranda v. Arizona*? The court finds that Mr. Brown's Fifth Amendment rights were not violated. Additionally, the court also finds that all of Officer Perry's subsequent actions complied with the Fourth Amendment.

After Officer Perry stopped the PT Cruiser, he approached the driver's side window and requested the driver's license and registration. The passenger opened the glovebox and a gun appeared in plain view. *See Coolidge*, 403 U.S. 443 (holding that plain-view searches are reasonable under the Fourth Amendment). At 7:42:24, Officer Perry called a "code red" to dispatch and removed Mr. Brown from the car to investigate. Mr. Brown was taken to the front of the vehicle and patted down for weapons. S*ee Terry v. Ohio*, 392 U.S. 1, 30 (1968) (holding that a pat-down for officer safety is a reasonable search under the Fourth Amendment).

Officer Perry smelled the scent of marijuana on Mr. Brown and noticed a plastic bag protruding from his pocket. It was in plain view.  The contents were green and leafy and resembled marijuana. Officer Perry removed the bag and saw that it contained several smaller bags, which also appeared to contain marijuana. At that time, Officer Perry arrested Mr. Brown for possession of an illegal substance, *see* NEV. REV. STAT. §§ 453.011, *et seq.* (prohibiting the possession of marijuana), and conducted a search of Mr. Brown incident to arrest. *See United States v. Rabinowitz*, 339 U.S. 56 (1950) (stating that a search incident to an arrest is a reasonable search under the Fourth Amendment).

Mr. Brown subsequently incriminated himself and stated that the gun in the car was his. Officer Perry Mirandized him and asked him additional questions about the gun. Mr. Brown provided details about the gun that were consistent with possession or ownership of the gun.

This juncture provides the basis for the parties' third dispute. Mr. Brown argues that Officer Perry conducted an unconstitutional two-step interrogation under *Missouri v. Seibert*, 542 U.S. 600 (2004). In *Seibert*, the Supreme Court held that an unconstitutional two-step interrogation occurs where a police officer, first, interrogates a suspect while withholding *Miranda* warnings in order to induce a self-incriminating statement and, second, Mirandizes the suspect and induces him or her to reiterate the self-incriminating statement immediately after issuing *Miranda* warnings. *Id*.

Mr. Brown's argument fails as a matter of law because there is no evidence in the record that Offer Perry was interrogating Mr. Brown when he first stated that the gun was his. *Miranda* only applies to circumstances involving "express questioning" or "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Here, all of the evidence indicates that Mr. Brown's confession was spontaneous. Spontaneous confessions do not violate *Miranda*. *United States v. Booth*, 669 F.2d 1231, 1237 (9th Cir. 1981).

The remaining events are straightforward. Officer Perry's backup, Detective Fink, soon appeared. Officer Perry debriefed Detective Fink and informed him that a gun was in the PT Cruiser's glovebox. Detective Fink took Mr. Brown into his unmarked car for an interviewed. Mr. Brown was Mirandized and the following exchange took place:

/// /// ///

/// /// ///

/// /// ///

> Q. Okay. After they read you your rights they were asking about the firearm and you actually bef—I wanna say before they read you your rights you admitted that the firearm was yours and had nothin' to do with her. Did you make that statement?
> A. Yes.
> Q. Why?
> A. Because it's mines.

(Doc. #18-1 at 10).

Mr. Brown now argues that his exchange constitutes an unlawful two-step interrogation under *Seibert*. Again, the court disagrees. The evidence demonstrates that Mr. Brown spontaneously confessed before being interrogated. The fact that Mr. Brown reiterated his spontaneous confession after being Mirandized does not violate *Seibert*.

### III. CONCLUSION

On February 5, 2015, Officer Perry stopped Mr. Brown. Officer Perry predicated the stop on two bases. One basis was valid and one was invalid. This did not violate the Fourth Amendment. Police officers are not attorneys and "not taking the bar exam." *Wallace*, 213 F.3d at 1220. Because Officer Perry had an objective basis for suspecting wrongdoing under the totality of the circumstances, the stop reasonable under the Fourth Amendment. *See Whren*, 517 U.S. at 813; *Arvizu*, 534 U.S. at 273.

Officer Perry and Detective Fink also complied with the Fifth Amendment. Mr. Brown spontaneously confessed when Officer Perry executed a search incident to arrest. This did not violate *Miranda*. *Booth*, 669 F.2d at 1237. Nor was *Miranda* violated when Mr. Brown reiterated his confession after being Mirandized by Officer Perry and, later, Detective Fink. Because the first confession was voluntary, the subsequent Mirandized confessions should not be suppressed. *See Seibert*, 542 U.S. 600.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Mr. Brown's Motion to Suppress (#18) be DENIED.

IT IS SO RECOMMENDED.

DATED this 9th day of September, 2015.

                                          CAM FERENBACH
                                          UNITED STATES MAGISTRATE JUDGE